UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cv-669-RJC

| | | |
|---|---|---|
| JOE N. BROWN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| LEWIS SMITH, Admin., | ) | |
| Albemarle Correctional Inst., | ) | |
| | ) | |
| Respondent. | ) | |

**THIS MATTER** comes before the Court on Respondent's Motion for Summary Judgment. (Doc. No. 8).

## I. BACKGROUND

Petitioner is a prisoner of the State of North Carolina who, on June 16, 2009, in Mecklenburg County Superior Court, the Honorable Forrest D. Bridges presiding, was convicted after a jury trial of felonious breaking or entering, larceny after breaking or entering, possession of drug paraphernalia, and having attained habitual felon status. See (Doc. No. 9-2 at 1, 25-26; Doc. Nos. 9-9; 9-10; 9-11; 9-12). On June 17, 2009, Petitioner was sentenced to 131–175 months' imprisonment. (Doc. 9-2 at 25). Gregory O. Tosi represented Petitioner at trial.

Petitioner appealed and on September 7, 2010, the North Carolina Court of Appeals affirmed Petitioner's conviction and sentence. State v. Brown, No. COA10-15, 2010 WL 3465675 (N.C. Ct. App. Sept. 7, 2010). On November 17, 2010, Petitioner filed a petition for writ of certiorari in the North Carolina Supreme Court. On December 15, 2010, that court denied the certiorari petition. State v. Brown, 364 N.C. 621, 705 S.E.2d 365 (2010).

Petitioner filed his § 2254 petition in this Court on December 29, 2011.[1] On April 30, 2012, Respondent filed the pending motion for summary judgment. (Doc. No. 8). On June 25, 2012, this Court entered an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), granting Plaintiff thirty days to respond to the summary judgment motion. (Doc. No. 11). Petitioner did not file a response to the summary judgment motion.

The North Carolina Court of Appeals summarized the facts from Petitioner's trial as follows:

> On 30 January 2008, at about midnight, Antoine Morehead was smoking a cigarette on his front porch when he saw a man walking on the opposite side of the street. The man crossed the street and stood on the porch of the house next door, which was being renovated at the time. The man turned his back to the front door, and kicked the door with his heel three or four times. After kicking the door, the man looked around before he broke a pane of glass in the door. The man then wrapped a white towel or rag around his hand, reached through the broken glass in the door to unlock the door, and entered the house.
>
> After witnessing the break in, Mr. Morehead went back inside his own house and continued to watch the neighbor's house while he called 911. Mr. Morehead described the man to the 911 operator as a "black male, about mid build, gray-hooded sweatshirt, camouflage pants and a book bag on his back." As he waited about ten or fifteen minutes for police to respond, Mr. Morehead could see a flashlight illuminating the interior of the house. Mr. Morehead never saw the man leave the house.
>
> The first officer who arrived believed that Mr. Morehead was the suspect. After they resolved the initial confusion, officers who were stationed about a block away took a suspect into custody, and the officer took Mr. Morehead to identify the suspect. Mr. Morehead was able to identify defendant as the man who broke into the house because he was able to see defendant clearly in the street lights. Defendant was also still wearing the same sweatshirt, camouflage pants, and book bag when Mr. Morehead identified him.
>
> When officers apprehended defendant, they found a metal painter's tool sticking

---

[1] Respondent asserts in its brief supporting the summary judgment motion that the Mecklenburg County Clerk of Court's office informed Respondent that Petitioner did not file a motion for appropriate relief in that court.

out of his right-front pants pocket. Searching defendant, officers found a crack pipe in his left-front pocket and a box of razor blades in his rear pocket. Officers found a utility light and two bottles of paint thinner in defendant's backpack. The property owners, who were renovating the house, identified the items taken from their property.

The jury found defendant guilty of felonious breaking or entering, larceny after breaking or entering, possession of drug paraphernalia, and having attained habitual felon status. The trial court found defendant to have a prior record level of VI, and defendant's prior record included felonious breaking and entering convictions dating back to 1993. The trial court consolidated the convictions into one judgment and imposed a presumptive-range term of 135 to 171 months imprisonment, based on defendant's habitual felon status.

State v. Brown, No. COA10-15, 2010 WL 3465675, at *1 (N.C. Ct. App. Sept. 7, 2010).

Petitioner brings the following grounds for relief in his § 2254 petition: there was a lack of evidence to support his convictions (Contentions One and Two); and Petitioner's sentence was disproportionate to the crimes for which he was convicted (Contentions Three and Four).

## II.    STANDARD OF REVIEW

### A.    Summary Judgment Standard

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

### B.    Section 2254 Standard

In addition to the motion for summary judgment standard set forth above, this Court must

also consider the Petition for Writ of Habeas Corpus under the requirements set forth in 28 U.S.C. § 2254. Section 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A claim is considered "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Young v. Catoe, 205 F.3d 750, 755 (4th Cir. 2000) (quoting Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)). A state court adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000). "It is not enough for us to say that, confronted with the same facts, we would have applied the law differently; we can accord [the petitioner] a remedy only by concluding that the state court's application of the law in his case was objectively unreasonable." See Tice, 647 F.3d at 103 (citing Williams v. Ozmint, 494 F.3d 478, 483–84 (4th Cir. 2007)).

"[W]e will not discern an unreasonable application of federal law unless 'the state court's decision lies well outside the boundaries of permissible differences of opinion.'" Id. at 108 (quoting Goodman v. Bertrand, 467 F.3d 1022, 1028 (7th Cir. 2006)).

In addition, "[a] federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Walker v. Martin, 131 S.Ct. 1120, 1127 (2011) (internal quotations and citations omitted). "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." Id. (citation omitted). A procedural default also occurs "when a habeas petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Hyman v. Keller, No. 10–6652, 2011 WL 3489092, at *9 (4th Cir. July 21, 2011) (quoting Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998)); see also 28 U.S.C. § 2254(b)(1)(A).

Section 2254's exhaustion requirement demands that a petitioner give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Larry v. Branker, 552 F.3d 356, 366 (4th Cir. 2009) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). However, a petitioner may overcome a finding of procedural default by showing cause and prejudice arising from the asserted constitutional error. McCarver v. Lee, 221 F.3d 583, 591–92 (4th Cir. 2000). To show "cause," a petitioner may make "a showing that the factual or legal basis for the claim was not reasonably available to counsel." Id. at 591 (quoting McCleskey v. Zant, 499 U.S. 467, 494 (1991)). To establish "prejudice," a petitioner must show "not merely that the errors at his trial

5

created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 592 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

A habeas petitioner may also overcome his procedural default by demonstrating that the court's failure to consider the claim will result in a fundamental miscarriage of justice. Hedrick v. True, 443 F.3d 342, 359 (4th Cir. 2006) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). The "fundamental miscarriage of justice" exception applies only to a narrow class of cases involving extraordinary instances "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke v. Haley, 541 U.S. 386, 392–94 (2004) (citing Murray v. Carrier, 477 U.S. 478, 494–96 (1986)).

**III. DISCUSSION**

    A.    Contentions One and Two–Insufficient Evidence of Petitioner's Convictions for Felonious Breaking or Entering, Larceny after Breaking or Entering, Possession of Drug Paraphernalia, and Having Attained Habitual Status.

In support of his first contention, Petitioner argues:

> Lack of evidence; never commit crime[.] Crime [scene investigator] did minimal investigation to [cer]tain evidence; evidence that my attorney[] Mr. Tosi present trial[.] No Backpack; no clothes; no fingerprints; no matching foot print from no flash light report by witness were producced [sic]; the only evidence produced at the trial was draw[n] picture may of the house; only evidence had posse[ssion] drug para[.]

(Doc. No. 1 at 5). In support of his second contention, Petitioner argues:

> On [January 30, 2008], I couldn't get myself clear on the night of Jan. 30, 2008. Office[r] stated to me no: why did detective withheld the Joe Brown evidence in my case: she didn't have the evidence from the crime lab report: but I never was place at the scene crime: the property was not present at the trial [June 16, 2009]. The analyst should correct the mistake the crime lab didn't do: that will be enough to make sure that the judge and jury realize what is [happening] at the

> trial: date [June 16, 2009] at the scene of crime; no towel that was to be stolen from the House was [presented] at trial; only print out of the House at the trial [June 16, 2009].

(Id. at 7). Although it is difficult to discern exactly what claims Petitioner is raising in his first and second contentions, it appears that he is arguing that there was insufficient evidence of the crimes for which he was convicted.

On federal habeas review, the standard of review for a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Wright v. West, 505 U.S. 277 (1992); Jackson v. Virginia, 443 U.S. 307 (1979). Any claim of insufficient evidence is necessarily a due process claim. Furthermore, it is well-established that, in reviewing claims of insufficient evidence, courts "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

Petitioner's Contentions One and Two are without merit. First, Petitioner did not raise these claims on direct appeal. Although Petitioner did not file a motion for appropriate relief in the state court, if he had, the MAR court would likely have dismissed the claims as procedurally defaulted for failure to raise the claims on direct appeal. See N.C. GEN. STAT. §§ 15A-1419(a)(1), (a)(3), and (b) (providing that claim shall be denied when defendant in adequate position to have raised it on appeal or in a prior MAR but did not do so, absent cause and prejudice or fundamental miscarriage of justice, i.e., actual innocence). Furthermore, Petitioner has not presented any ground for excusing the procedural default.

In any event, Petitioner's insufficiency of the evidence claim fails on the merits. As the

7

North Carolina Court of Appeals discussed in its opinion affirming Petitioner's convictions, Antoine Morehead witnessed the breaking or entry and larceny for which Petitioner was convicted. Brown, 2010 WL 346575, at *1. Morehead's description of the perpetrator matched Petitioner's appearance, and Morehead identified Petitioner as the perpetrator. Id. When Petitioner was apprehended, he was carrying items the owners identified as being taken from the house. Petitioner was also in possession of a crack cocaine pipe, thus giving the State sufficient evidence to charge him for possession of drug paraphernalia. In sum, the evidence at trial was clearly sufficient to support Petitioner's convictions. Therefore, Petitioner's due process claim based on insufficiency of the evidence is without merit.

      B.      Contentions Three and Four–Petitioner's Sentence Violates His Right to Be Free from Cruel and Unusual Punishment under the Eighth Amendment.

In Petitioner's third and fourth contentions, he contends that his sentence of 131–175 months' imprisonment was disproportionate to the crimes for which he was convicted. Thus, Petitioner contends that the sentence violated the Eighth Amendment. Petitioner fairly raised the substance of his Eighth Amendment claim on direct appeal. The North Carolina Court of Appeals found that the claim lacked merit, stating:

> Defendant's sole argument on appeal is that the sentence imposed based on his habitual felon status is so disproportionate to the crimes he committed as to violate the Eighth Amendment's prohibition against cruel and unusual punishment. Defendant, however, acknowledges in his brief that our Supreme Court has held that enhanced sentences properly imposed pursuant to recidivist statutes, including the Habitual Felon Act, are not so grossly disproportionate as to violate the Eighth Amendment. State v. Todd, 313 N.C. 110, 119, 326 S.E.2d 249, 254 (1985). Defendant cites no authority to the contrary, and identifies no irregularity in the sentence imposed in this case. Defendant was not, as he argues, sentenced to 135 to 171 months imprisonment merely because he broke into a house, stole various construction implements, and possessed a crack pipe. Instead, as this Court has previously held, "[d]efendant was sentenced to that term because he committed multiple felonies over a span of almost twenty years and is

8

a habitual felon." State v. Hensley, 156 N.C. App. 634, 639, 577 S.E.2d 417, 421
(2003). Accordingly, we find no error in defendant's conviction or sentence.

State v. Brown, 2010 WL 3465675, at *2.

The state court's adjudication of Petitioner's Eighth Amendment claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it an unreasonable application of the facts in light of the evidence presented in the state court proceedings. The Supreme Court discussed the proportionality analysis under the Eighth Amendment's proscription against cruel and unusual punishments in Graham v. Florida, 130 S. Ct. 2011, 2021 (2010).

Application of Graham v. Florida and its progeny to the facts in this case simply does not require a finding of cruel and unusual punishment in violation of the Eighth Amendment. In other words, application of clearly established Supreme Court law does not, as Petitioner contends, mandate a finding that his sentence is disproportionate to the crimes for which he was convicted. See Ewing v. California, 538 U.S. 11 (2003) (sentence of 25 years to life for theft of golf clubs under California's "three strikes" law upheld under Eighth Amendment); Lockyer v. Andrade, 538 U.S. 63 (2003) (two consecutive terms of 25 years to life for two counts of petty theft under California's "three strikes" law upheld under Eighth Amendment); Harmelin v. Michigan, 501 U.S. 957 (1991) (mandatory life without parole for possessing more than 650 grams of cocaine does not violate Eighth Amendment); Rummel v. Estelle, 445 U.S. 263, 285 (1980) (mandatory life sentence imposed pursuant to recidivist statute did not violate ban on cruel and unusual punishment); Spencer v. Texas, 385 U.S. 554, 556 (1967) (upholding habitual-criminal statute in light of challenges under due process, and noting that the Court sustained challenges to such statutes in light of arguments "that they violate constitutional

strictures dealing with double jeopardy, ex post facto laws, cruel and unusual punishment, due process, equal protection, and privileges and immunities.").

In sum, Petitioner's third and fourth contentions are without merit.

## IV. CONCLUSION

For the reasons stated herein, Respondent is entitled to summary judgment as to all of Petitioner's claims.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion for Summary Judgment, (Doc. No. 8), is **GRANTED**.

2. It is further ordered that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: August 21, 2012

Robert J. Conrad, Jr.
Chief United States District Judge